# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| TRISTIAN MURRAY and IVEEY JONES,<br><br>      Plaintiff,<br>  v.<br><br>UNITED STATES OF AMERICA,<br><br>      Defendant. | Case No. 2:23-cv-04991-RMG<br><br>**ORDER AND OPINION** |

Before the Court is Defendant's motion to dismiss or, in the alternative, for summary judgment. (Dkt. No. 29). Plaintiffs filed a response (Dkt. No. 33), and Defendant replied (Dkt. No. 34). For the reasons set forth below, the Court grants Defendant's motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

**I.    Background**

This action arises out of a single car accident that occurred on Bullhead Road, designated Forest Service Road 108 ("FSR 108"), in the Francis Marion National Forest ("FMNF") on January 1, 2022. (Dkt. No. 1 at ¶¶ 9-10). Plaintiffs allege that they struck a large hole on the dirt roadway that was left there by Defendant. (Dkt. No. 1 at ¶ 11). The car allegedly fishtailed and rolled over, causing serious injuries to Plaintiffs. (Dkt. No. 1 at ¶ 90). Plaintiffs allege that that the US Forest Service ("FS") was negligent in failing to maintain, inspect, or repair the road, or to warn motorists of the pothole prior to the wreck.(Dkt. No. 1 at ¶ 11).

The FS manages the FMNF for multiple uses, including watershed protection and improvement, timber and wood production, habitat for wildlife and fish species (including threatened and endangered species), wilderness area management, and recreation. (Dkt. No. 29 at 5). The FMNF includes 259,000 acres of forested land, and 600 miles of roads. (Dkt. No. 29 at 4).

1

There are three documents that address road classification levels and maintenance objectives: the Forest Service Manual ("FSM"), the Forest Service Handbook ("FSH"), and Guidelines for Road Maintenance Levels ("Guidelines"). FSR 108 is at the northern end of the FMNF and is classified as a level 3 road. A level 3 road is "open and maintained for travel by a prudent driver in a standard passenger car." (Dkt. No. 29 at 7-8).

Defendant has moved to dismiss the case for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Defendant claims it is immune from suit under the Federal Tort Claims Act's ("FTCA") discretionary function exception. (Dkt. No. 29 at 15). Defendant argues that there is no federal directive that mandates the FS to maintain, inspect, repair, or post warnings on FSR 108 in a specified manner. (Dkt. No. 29 at 18-25).

## II.     Legal Standard

### a. 12(b)(1) Motion for Lack of Subject Matter Jurisdiction

The Government's motion is 12(b)(1) motion for lack of subject matter jurisdiction, and the Fourth Circuit has recognized that the proper practice for purposes of considering exceptions to the FTCA is under Rule 12(b)(1), as opposed to summary judgment under Rule 56(c). *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995).

A defendant may challenge subject matter jurisdiction in one of two ways. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). First the defendant may contend "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Id.* When a defendant makes a facial challenge to subject matter jurisdiction, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration."

*Id.* In that situation, the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction. *Id.*

In the alternative, the defendant can contend "that the jurisdictional allegations of the complaint [are] not true." *Id.* the plaintiff in this latter situation is afforded less procedural protection: if the defendant challenges the factual predicate of subject matter jurisdiction a trial court may then go beyond the allegations of the complaint and determine if there are facts to support the jurisdictional allegations without converting the motion to a summary judgment proceeding. *Id.* In that situation, the presumption of truthfulness normally accorded a complaint's allegations does not apply, and the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction. *Id.*

The Court need not resolve all factual disputes when the jurisdictional facts and the facts central to a tort claim are inextricably intertwined. *See United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 348 (4th Cir. 2009). In such a situation, "a trial court should dismiss under Rule 12(b)(1) only when the jurisdictional allegations are clearly immaterial and made solely for the purpose of obtaining jurisdiction. *Kerns v. U.S.*, 585 F.3d 187, 192 (4th Cir. 2009). Indeed, in all situations, the Court should grant a Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

### b. Federal Tort Claims Act Discretionary Function Exception

"[N]o action lies against the United States unless the legislature has authorized it." *Dalehite v. United States*, 346 U.S. 15, 30 (1953). However, by virtue of the FTCA, Congress created a limited waiver of sovereign immunity for claims brought against the United States based on the

negligence or wrongful acts or omissions of its employees committed within the scope of employment. 28 U.S.C. §§ 1346(b)(1), 2671–2680. In those circumstances, the Government will accept liability in the same manner and to the same extent as a private individual would have under like circumstances. *Id. See Wood v. United States*, 845 F.3d 123, 132 (4th Cir. 2017). The waiver is limited and circumscribed by numerous exceptions. *See Wood*, 845 F.3d at 132.

Pursuant to the discretionary function exception to the FTCA, the Government is not liable for any claim "based upon the exercise or performance or the failure to exercise or perform *a discretionary function or duty* on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a) (emphasis supplied). "Plaintiffs bear the burden of proving that the discretionary function exemption does not apply." *Indemnity Ins. Co. of North America v. U.S.*, 569 F.3d 175, 180 (4th Cir. 2009). Furthermore, the FTCA is strictly construed, and any ambiguities are resolved in favor of the United States. *See U.S. v. Nordic Village, Inc.*, 503 U.S. 30, 33–34, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992).

Determining whether the discretionary function exception applies involves two steps. First, the Court must determine whether the challenged conduct "involves an element of judgment or choice." *Suter v. U.S.*, 441 F.3d 306, 310 (4th Cir. 2006). No discretion has been found when "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Indemnity Ins. Co.*, 569 F.3d at 180. Second, the Court must determine "whether [the] judgment [in question] is of the kind that the discretionary function exception was designed to shield, i.e., whether the challenged action is 'based on considerations of public policy.'" *Suter*, 441 F.3d at 311. "This second step of the analysis is designed to prohibit courts from 'second guessing' decisions 'grounded in social, economic, and political policy through the medium of an action in tort.'" *Wood*, 845 F.3d at 128 (*quoting United States v. Gaubert*, 499 U.S. 315, 323, 111

S.Ct. 1267, 113 L.Ed.2d 335 (1991)). Furthermore, "when established government policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324, 111 S.Ct. 1267. "Determining whether the discretionary function exception applies is not a fact-intensive exercise, as the court will only 'look to the nature of the challenged decision in an objective, or general sense, and ask whether that decision is one which we would expect inherently to be grounded in considerations of policy.'" *Chang–Williams v. Dep't of the Navy*, 766 F.Supp.2d 604, 617 (D. Md. 2011) (quoting *Baum v. United States,* 986 F.2d 716, 721 (4th Cir. 1993)).

**III.   Discussion**

Defendant's principal claim is that under the FTCA, the United States has not waived sovereign immunity for claims based upon a discretionary function of the government and therefore, the Court lacks jurisdiction over Plaintiff's claims. 28 U.S.C. § 2680(a). Defendant notes that:

> "[e]mployees of the Forest Service exercise their judgment and discretion in operating and maintaining roads in the Francis Marion National Forest based on a multitude of factors, and in the exercise of that discretion must balance and weigh various competing policy considerations that implicate the environment, public access and safety, resource allocation, and preservation of natural and cultural resources. Section 2680(a) precludes judicial review of such decisions."

(Dkt. No. 29 at 1-2). Defendant argues that because the forest system is so vast, with miles of roads and trails, and competing priorities, "it would be infeasible to operate, inspect, and maintain each road and trail in the NFS, and more particularly here in the FMNF, on a mandated schedule with the available resources." (Dkt. No. 29 at 12-13). Defendant claims the FS's decision to not fill in

the pothole was a discretionary policy judgment regarding the use of their resources, and therefore Defendant is immune from suit.

Plaintiffs disagree and argue that the FTCA's discretionary function exception does not apply in this case. (Dkt. No. 33 at 5). Plaintiffs argue that the decision to maintain the road in a safe condition is not a discretionary function, but rather mandatory routine maintenance. (Dkt. No. 33 at 5-6). Plaintiffs also invoke *Indian Towing Co. v. United States* for the contention that once the government undertakes a duty, it must perform it with due care. 350 U.S. 61 (1955). Plaintiffs argue that even if there is no specific directive commanding FS officials to properly maintain FS roads, they began to maintain it and therefore "had a duty to carry out routine maintenance and inspections to keep the road safe" (Dkt. No. 33 at 7).

As stated above, determining whether the discretionary function exception applies requires a two-step analysis. First, Plaintiffs are required to establish that a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. *Indemnity Ins. Co.*, 569 F.3d at 180. Second, Plaintiffs must show that the judgment in question was not based on considerations of public policy. *Suter*, 441 F.3d at 311.

The Court finds that Plaintiffs have failed the first prong of the analysis because they did not show a federal statute, regulation, or policy that directs Defendant to maintain FS 108 in a specific way. They claim that the policies governing the road maintenance on FS lands are set out in the FSM, FSH, and the Guidelines. (Dkt. No. 33 at 1). However, as Defendant notes, the FSM does not contain mandatory directives requiring FS officials to inspect, maintain, or repair FS roads or warn of potential hazards in a certain manner or under a particular schedule. *See Ball v. United States*, 2018 WL 4095084 at *6 (FSM relevant chapters do not contain mandatory directives on operation and maintenance of FS roads, but rather vest FS officials with discretion to carry out

operation and maintenance). *Cf. Gonzalez v. United States*, 851 F.3d 538, 545 (5th Cir. 2017) ("[T]he relevant Manual and Handbook provisions contemplate an element of choice as to how FS employees inspect and maintain the trails."). Likewise, the FSH does not mandate specific conduct requiring FS officials to inspect, maintain, or repair FS roads or warn of potential hazards in a certain manner or under a particular schedule. The FSH recognizes that "[m]aintenance needs often exceed available resources" and that FS officials are to establish priorities to ensure that the available funding is directed to the highest priority work. (Dkt. No. 29 at 22). The FSH also notes that "[t]o the extent deemed feasible and appropriate by the Forest Supervisor, NFS roads should be managed for safe passage by road users." (Dkt. No. 29 at 12). Lastly, the Guidelines are just that; a set of guidelines that describe FS road classification levels and maintenance objectives, but they do not mandate the manner in which FS maintains its roads. (Dkt. No. 29-7). *Mattle v. United States*, 2013 WL 11328421, at *6 (C.D. Cal. Nov. 26, 2013) (Guidelines do not require FS to classify its roads based on specific criteria or that the FS maintain the roads pursuant to a fixed schedule or in a set way).

Because there is no federal directive mandating particular conduct in relation to FSR 108, the Court finds the maintenance of the road to be a discretionary judgment made by FS employees. The Court now turns to the second prong of the discretionary function exception analysis and asks if the judgment in question is based on considerations of public policy. *See Gaubert*, 499 U.S. at 322-23.

Plaintiffs argue that the relevant judgments are not based on considerations of public policy because the preservation of FSR 108 is simply routine maintenance. Defendant argues that the

judgments made by the FS employees regarding maintenance of the road are inextricably linked to policy concerns. The Court agrees with Defendant.

FS officials are directed to consider and weigh various factors or policy concerns in making maintenance and inspection plans. The FSM states:

- "Objectives in road operation and maintenance include safe and efficient travel, access for the administration, utilization, and protection of NFS lands; and protection of the environment, adjacent resources, and public investment."
- "FS officials are to maintain roads to accommodate intended use safely; schedule and coordinate road maintenance to accomplish work in the most efficient and cost-effective manner."
- "FS officials are to maintain NFS roads to a standard that protects the FS investment, unless an economic analysis determines that postponing reconstruction is more cost-effective."
- "Policy considerations include considering and minimizing effects of transportation facility construction, reconstruction, maintenance, and decommissioning on heritage resources, ecological processes, and ecosystem health, diversity, and productivity."
- "FS officials are to analyze road features and traffic operations that have caused or have the potential to cause accidents to the extent practicable and appropriate as part of periodic condition surveys. On low-volume roads, the Forest Supervisor is to use common sense and judgment to determine safety deficiencies and the priority for any corrective action deemed feasible and appropriate by the Forest Supervisor. Condition surveys are to be performed to the extent funding and other resources are available."
- "Objectives of the sign and poster program are to support the accomplishment of the direction contained in land and resource management plans for the administration, protection, management, and use of NFS lands; provide information for the safety, enjoyment and convenience of users; provide information about geographic and historical features, and identify facilities and lands within the NFS."

(Dkt. No. 29 at 27-28). The documents that guide FS officials' conduct specifically directs them to consider a multitude of policy considerations including protecting the environment, efficient use of resources, safety, cost-effectiveness, and convenience.

Mr. Mann, a civil engineer in the FS, noted in an affidavit that to eliminate the potholes on Bullhead Road, the Forest Service would need to engage a third party to "mow the road and then regrade it and if it's needed, put down more aggregate." (Dkt. No. 33-2). Using resources and hiring third parties to fill holes on back forest roads likely requires some consideration of

convenience, ecosystem health, prioritization of funds, and feasibility. This process and the factors to consider do not constitute "routine maintenance" as Plaintiffs allege.

Further, Courts have consistently found that the decision to maintain roads and trails, as well as placing warning signs are discretionary judgments involving policy concerns. *See Gonzalez*, 851 F.3d at 551 (5th Cir. 2017) (finding that consideration of safety and protection of resources by FS officials satisfied the public policy prong of the discretionary function test); *see also Ball*, 2018 WL 5095084 at *7 (finding that "[t]he discretion allowed under the FSMs, the FSHs, the Guidelines, and the Annual Plan, for design, reconstruction, and maintenance of FS Road 52, is of the type that Congress intended to be protected from liability and is susceptible to policy analysis"); *Mattle v. United States*, 2013 WL 11328421 at *3 (C.D. Cal. Nov. 26, 2013) (no jurisdiction over claim that the FS was negligent in maintaining road designated for off-highway vehicles); *Brewer v. United States*, C.A. No. 08-196 Erie, 2011 WL 2708959 at *1 (W.D. Penn. July 12, 2011) (no jurisdiction over claim that the FS was negligent in allowing potholes and other irregularities to be present); *Woolf v. United States*, 2009 WL 911042 at *1 (D. Utah Mar. 31, 2009) (no jurisdiction over claim that the FS was negligent in completing road maintenance and sign placement). The Court therefore finds that the FS officials are given discretion over road maintenance, and their judgment involves policy concerns.

Plaintiffs argue that, similar to *Indian Towing*, the government here had a duty to maintain the roads once they started. However, that case is not analogous here. Mr. Buchholz testified that "the potholes present more of an issue with user comfort and convenience" than a hazard. (Dkt. No. 33-1). The Plaintiffs in *Indian Towing* had a reasonable safety reliance on the lighthouse's light for guidance. Here, Plaintiffs have not established anything to show they could have reasonably relied on a dirt road without potholes. In fact, Mr. Buchholz, the Operations and

9

Maintenance Program Manager for the FMNF, noted that on Level 3 roads like FSR 108, a "combination of dips and culverts provides drainage, and potholing and washboarding may occur." More importantly, as the Fourth Circuit notes in *Indian Towing*, "the government conceded that the maintenance of the lighthouse did not fall within the discretionary function exception" *Baum v. United States*, 986 F.2d 716, 723 (4th Cir. 1993); *see also Indian Towing Co. v. United States*, 350 U.S. 61, 64 (1955) ("The Government concedes that the exception of s 2680 relieving from liability for negligent 'exercise of judgment' (which is the way the Government paraphrases a 'discretionary function' in s 2680(a)) is not involved here"). Therefore, the case is not analogous, and Defendant owed no duty to Plaintiffs to ensure FS 108 had no potholes.

The Court finds that Plaintiffs' claims fall within the discretionary function exception of the FTCA. Because Defendant is immune from suit for its discretionary acts, the Court does not have subject matter jurisdiction to hear this case.

**IV.     Conclusion**

In light of the foregoing, the Court **GRANTS** Defendant's motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure with prejudice. (Dkt. No. 29).

**AND IT IS SO ORDERED.**

                                               s/ Richard M. Gergel
                                              Richard Mark Gergel
                                              United States District Judge

February 24, 2025
Charleston, South Carolina